Knowlton *v.* Reed.

KNOWLTON, *Adm'r, in Equity, versus* REED *& als.*

Of the elements of a partnership.

Of the distinction between part owners and partners.

Of a tenancy in common.

Under the equity jurisdiction of the Supreme Judicial Court may be brought all cases of partnership.

To confer jurisdiction under this head, the *parties* to the bill must bear the relation of *partners* to each other, and the property claimed must be the effects of a *partnership.* Being part owners, or tenants in common, and property thus held will not avail.

BILL IN EQUITY. This bill was brought by plaintiff as administrator of Ephraim B. Stevens against W. Reed, jr., E. G. Reed, Henry Hedge, Henry M. Springer, Amaziah Trask, William T. Libby and Benj. H. Reed, to account for the plaintiff's share of the effects of an alleged partnership.

The case was heard upon a general demurrer and answers by those who had been notified, and upon facts agreed.

The parties to this bill on Nov. 26, 1849, entered into an agreement, under their hands and seals, with W. & D. Moor, jr., to lease of them the steam boiler, engines, and the steam machinery that was then in the steam boat Oregon, the frame of a new boat with the necessary lumber, spikes, &c., to build a new hull with, by their shipping the same and paying the freight to San Francisco; and there the parties to this bill were to construct a new boat from said materials, and to have the use of it by paying said lessors one fourth of the gross earnings for one year after she was ready for business; and if sold at the end of one year the lessees were to have one-half of what she sold for, and said Moors the other half, and the same proportion if sold afterwards, and if not sold, to run longer on similar terms, if all the owners agreed to it.

On Dec. 4, 1849, the parties to this bill made and signed the following agreement: —

" 1st. We the undersigned agree to form ourselves into a company to go to *California.*

" 2d. Each one agrees to furnish himself with one year's provisions, to the amount of at least seventy-five dollars. He also agrees to pay the freight out there on the same. Each one also agrees to pay his passage there, also to furnish his own clothes, bedding, &c., also each one to furnish equally his part of tools suitable for building a steam boat called the *Gold Hunter,* on some part of the Sacramento river.

" 3d. Each one also agrees to stop by said boat one year at least from the time she is ready to operate. We also agree she shall be employed in digging in the bed of the river *Sacramento,* or any of its

branches as we may think proper, or to run her as a freight and pas-senger boat on the river, or in any other business as we may think most advantageous for all concerned.

" 4th. We also agree this company shall compose the crew of said boat and that each one shall do the part allotted to him to the best of his knowledge and judgment, for the benefit of all concerned.

" 5th. We also agree, that this boat shall have two officers, viz, Captain and Mate, (to be voted in by the company,) who shall retain the command of said boat for one year from the time she is ready to commence running; the Captain to keep the books and all the ac-counts for the said term of one year, and if required by any of the company, to exhibit his books once every three months during the above term; each one of the company to be allowed equal rights and equal privileges.

" 6th. We also agree if any one of said company is sick to do all in our power to restore him, and make him comfortable, and if a phy-sician is necessary to obtain one if possible, the company paying all expenses equally, and in all cases of sickness or lameness, the one so unfortunate shall receive the same share or pay as he had while well, so long as he may continue sick, and if he should die, his near-est relatives shall receive one half his pay or share, so long as the company continue together, from the time of his death.

" 7th. We also agree that said steam boat shall receive one quar-ter part of her earnings, the other three quarters to be equally di-vided among the company, after paying all expenses for running the boat, and all other expenses to or upon said boat during the time aforesaid, according to our contract with William & Daniel Moor.

" 8th. We also agree that if any one deserts the company before the expiration of one year from the time aforesaid, he shall forfeit his part of the provisions and wages in the hands of the company at that time, &c.

" 9th. We also agree that if we think the Captain's services worth more to the company than any one else, we will consider him something out of our shares, whatever we may think proper, and if we do not earn any thing, or make any thing, he will not receive any more than the others."

The members of the company, with the exception of Springer, proceeded to San Francisco, and after their ar-rival, labored and turned in their earnings to purchase ma-terials for the new boat, the intestate contributing more than the others; and the purposes for which the company was formed, were carried out until the death of the intes-tate, in November, 1850. After his death, the boat was finished and run according to the contract until it was sold.

The plaintiff claimed right to a discovery of the accounts

of receipts and expenditures, and a decree for his intestate's share of the earnings and sale of the boat.

*W. G. Crosby*, for respondents, contended that the case as presented, did not come within the jurisdiction of the Court. It was not a case of *partnership*, and cited *Dwinel v. Stone*, 30 Maine, 384.

*Knowlton, pro se.* A partnership is a contract to share the profits and loss. Story on Contracts, § 198. Here was a community of interest in the capital stock and in the net profits. Story on Contracts, § 203. No one of the company owned any thing separate by himself. So far as any thing appears, each one of the company had the right "to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership for its purposes, in the same manner and with the same powers, as all the parties could when acting together." By the very principles laid down in the case cited for respondents, this was a partnership.

TENNEY, J. — Relief is sought of the Court, as a Court of equity, in this case, as one of partnership, under the jurisdiction conferred by R. S., c. 96, § 10. It thus becomes important to ascertain, whether the plaintiff's intestate and the defendants held the relation of partners to each other in the contracts between them, and the transactions referred to in the bill, answers, proofs and agreement; and whether the property that is claimed in this suit was such as can be treated as the effects of a partnership.

"The true nature, character and extent of the rights and interests of partners, in the partnership capital stock, funds and effects are to be ascertained by the doctrines of law applicable to that relation, and not by mere analogies furnished by joint tenancy, or by tenancy in common." Partners are joint owners and possessors of all the capital stock, funds and effects, belonging to the partnership, as well those acquired during the partnership, as those which belonged to it, at the time of its first formation and establishment. So

that whether its stock, funds or effects be the product of their labors or manufactures, or be received or acquired by sale, bargain or otherwise, in the course of their trade or business, there is an entire community of right therein between them; each has a concurrent title in the whole, or, as Bracton says, *Tenet totum in communi, et nihil separatim per se.*" Story on Part. § 91.

"Every partnership is founded in a community of interest, but every community of interest does not constitute a partnership." Story on Part. § 3. "There is no survivorship in cases of partnership." Story on Part. § 90. "There is no doubt, that by the principles of the common law, the death of any one partner will operate as a dissolution of the partnership, however numerous the association may be, not only as to the deceased partner, but as between all the survivors. Story on Part. § 317. "Although as to future dealings, the partnership is terminated, by the death of one partner, yet for some purposes, it may be said to subsist, and the rights, duties and authorities of the survivors remain, so far as is necessary, to enable them to wind up and settle the affairs of the partnership. They have therefore, a right to receive the debts, due to the partnership; and on the other hand to apply the partnership assets and effects in discharge of the debts, and other obligations due from it.". Story on Part. § 344.

"The act of each partner in transactions relating to the partnership, is considered the act of all, and binds all. He can buy and sell partnership effects, and make contracts in reference to the business of the firm, and pay and receive; draw and indorse, and accept bills and notes." 3 Kent's Com. § 43, p. 17, 1st ed. "With respect to the power of each partner over the partnership property, it is settled, that each one, in ordinary cases, and in the absence of fraud on the part of the purchaser, has the complete *jus disponendi* of the whole partnership interests, and is considered to be the authorized agent of the firm. He can sell the effects or compound or discharge the partnership debts."

"A like power in each partner exists in respect to purchases on joint account, and it is no matter with what fraudulent views the goods were purchased, or to what purposes they were applied by the purchasing partner, if the seller be clear of the imputation or collusion. 3 Kent's Com. p. 20.

"A partner may pledge, as well as sell the partnership effects, in a case free from collusion, if done in the usual mode of dealing, and it has relation to the trade, in which the partners are engaged, and when the pawnee has no knowledge that the property was partnership property. 3 Kent's Com. p. 22.

"Partners differ from mere part owners of goods and chattels in several respects. The latter are either joint owners or tenants in common, having a distinct, or at least an independent, although an undivided interest in the property, and neither can transfer or dispose of the whole property, or act for the others in relation thereto; but merely for his own share, and to the extent of his own several right and interest." Story on Part. § 89.

"In tenancy in common each party has a separate and distinct, although an undivided interest, and possesses (as it is technically expressed,) the whole of an undivided moiety of the property and not an undivided moiety of the whole property." Story on Part. § 90.

"If a part owner sells, he can sell only his undivided right. The interest of part owners is so far distinct, that one of them cannot dispose of the share of the others, and this may be considered as a settled principle." 3 Kent's Com. § 45, pp. 116 & 117, 1st ed.; Story on Part. § 90.

"There is no survivorship between tenants in common, but the share of the deceased tenant in common goes to his personal or real representative." Story on Part. § 89.

In the case of *Livingston* v. *Lynch*, 4 Johns. Ch. R., 573, the Chancellor says, "one partner may pledge the credit of the others to any amount, and each partner commits his entire rights to the discretion of each of his co-partners." But with tenants in common, "each has a distinct, though un-

divided interest, in the establishment, and an entire dominion over his own share or proportion of the property; but without any right or power to bind the interest or regulate the enjoyment of the property of the other members;" and in the same case it is said, " so, the provision, that the shares of each of those members should, on his death, descend to his heirs, was founded entirely upon the contemplation of a tenancy in common." *Dwinel* v. *Stone,* 30 Maine, 384.

In the case under consideration, on Nov. 26, 1849, W. & D. Moor, jr., made a lease to William Reed, jr., and others, embracing the plaintiff's intestate and the defendants, of a steam boiler, steam engine and other materials with which to prepare a steam boat in California, on the conditions and terms therein expressed. Among other things therein stipulated, the said Reed and others were to have the use of the steam boat, by paying to the said W. & D. Moor, jr., one fourth part of the gross amount, that said boat and crew should earn for one year after the same should be ready for business; and the said Reed and others were to have one half part of the amount, for which said boat should sell, after one year's operation, if the boat should be then sold; if not sold then, it was to be one half part at the time of the sale. On the 4th day of December next following, William Reed, jr., and others, the lessees of W. & D. Moor, jr., mutually contracted in writing with each other, that they would form themselves into a company to go to California; each to furnish himself with provisions, and pay the freight thereof, to pay his own passage, to furnish his clothes and bedding, and his part of the tools, for building the steam boat; to stop by said boat one year, at least, from the time that she should be ready to run, and compose the crew of the same, in the business in which it was therein stipulated she should be employed, and to do the part allotted to him, for the benefit of all concerned, according to his best skill and judgment. It was provided that a captain and mate of the boat should be chosen by the votes of the company, to have command for one year from the time of the readiness of the boat to run;

the captain to keep the books and all accounts for the term of one year, and exhibit the same as often as once in three months, at the request of any one of the company. Each member was to be allowed equal privileges with the others. In case of sickness or bodily inability of any member to perform the ordinary duties, it was agreed, that he should have all proper care and attention at the expense of the company, equally to be divided with its members, and should be entitled to the same share during such sickness or disability, as he had a right to receive, when well; and in case of his death, his nearest relatives were to receive one half of his pay or share, so long as the company should continue together after his death. The steamboat was to receive one quarter part of her earnings, and the other three quarters were to be equally divided among the company, after paying all expenses for running the boat, and all other expenses to or upon the same during the time agreed upon, according to their contract with W. & D. Moor, jr.

The contract of W. & D. Moor, jr. with William Reed, jr. and others their lessees, was several days previous to that of the latter among themselves. The rights obtained by the lessees under that contract were those which they held as tenants in common, and not otherwise. In the subsequent agreement, there is no provision in terms that those rights had undergone or should undergo any alteration. Nothing of the kind is implied. It is equally silent in reference to the power of the individual members of the company, to make contracts in behalf of the whole, incur liabilities, manage the whole business, or dispose of the property on their account; no provision is made for a name of the company. The parties to the contract of Dec. 4, 1849, provided for a continuance of their common enterprise, under the same agreement, which was the basis of their association, if any members thereof should die before its completion. It was manifestly the intention, that in such an event, there was to be no survivorship between the members, but that the share of such person should go to his heirs, under the stip-

ulation that his nearest relatives should receive one half of his share or pay, so long as the company should continue together from the time of his death; exhibiting the design that the company should continue to exist by virtue of the contract, with the same number of shares after the death of some of the members, as before; but that the share which had belonged to a member who should die, should not be treated as being so valuable afterwards, as when the owner was actively engaged as one of the company in the promotion of its objects. This provision touching the shares of deceased members, while the purpose of the company should be in progress, " was declaring the true character and interest of tenants in common."

The bill is framed, so that if relief can be granted according to the prayer thereof, it must be under the equity jurisdiction of the Court, over the case, as one of partnership. It is not such, and therefore cannot be maintained. Whether the merits of the case can be considered, by this Court in the exercise of the equity power conferred upon it, under a bill properly framed, it is not now important to intimate.

Where Courts of equity have unlimited jurisdiction, as in England, the ordinary remedy for part owners of a *ship* to obtain an adjustment of the ship's accounts among themselves, is a suit in a Court of equity. Abbott on Shipping, part 1, c. 3, § 6, p. 145, 5th Am. ed. In this State, it has been held, that while between the joint owners of a vessel, no settlement has been made of her disbursements and earnings, and no balances have been ascertained and agreed upon, one part owner cannot sustain against another an action for his proportion of the net avails. *Maguire* v. *Pingree*, 30 Maine, 50; 12 Pick. 378, and that the ordinary remedy for the adjustment of the accounts between themselves is in a Court of equity. Story on Part. § 449; Story on Eq. Juris. § 442 to 450. It does not follow, that if such a remedy is open to the part owners of a ship, that it could apply to such a case as that presented in the present

instance, under the limited equity powers of this Court. Neither is it to be assumed, that the plaintiff may not have at law an adequate remedy. Part owners of a ship may maintain an action against other part owners of account and for the destruction thereof; "and by parity of reasoning probably for a sale of the entirety of the ship without their consent." Story on Part. § 449 ; *Wilson* v. *Reed*, 3 Johns. 175. The tenant in common of a chattel may maintain trover against his co-tenant for the sale of the entire chattel without authority. But no opinion is intended to be intimated touching the appropriate remedy for the plaintiff in this case, if his intestate or the estate has been deprived of legal or equitable rights by any or all of the defendants in the present suit.     *Bill dismissed with costs.*

SHEPLEY, C. J., and HOWARD and HATHAWAY, J. J., concurred.